## PENNSYLVANIA R. R. CO. VS. McHUGO.

A railroad company is liable for damages for the death of a man caused by their engine and crew upon ano her railroad if the crew were not under the orders of the other railroad company.

Error to Common Pleas No. 2 of Philadelphia County. No. 110 July Term, 1876.

The plaintiff claimed damages for the killing of a son over twenty-one years of age, and proved that he paid his wages over to his mother every month. The Court charged in respect to this as follows:

But after twenty-one years of age you must prove affirmatively that there is a reasonable probability from all the surroundings of the case that the father in the future would be

entitled to some pecuniary profit from the son, and the jury are to determine the length of time, in all probability, from all the circumstances of the case, that that would continue.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

The basis upon which you are to determine the damages in this case is, taking all the facts, whether it would be likely he would have his wages raised; whether it would be likely from the two, three, four or five years in which he had been employed by this company; whether he would be likely to continue in the employ of the company, and whether he would be likely to continue to give to his father after his arrival at the age of twenty-one years these moneys that he received; that is the surplus of fifteen dollars per month, and the length of time that he would be likely to continue the payment of this money, the fifteen dollars per month, how many years would he be likely to do it?

The Court left to the jury to determine whether the crew acted under the orders of the Pennsylvania Railroad Company. Verdict for plaintiff.

The Pennsylvania Railroad Company then took a writ of error, complaining of the action of the Court in refusing to charge that the Pennsylvania Railroad Company was not liable as the accident was not on their road, and as to the measure of damages.

*Chapman Biddle, Esq.*, for plaintiff in error.

*D. W. Dougherty and Hunn Hanson, Esqs. contra.*

The Supreme Court affirmed the judgment of the Common Pleas on February 4th, 1878, in the following opinion, per

TRUNKEY, J.:

The Junction Railroad has no motive power, passenger or freight cars. It connects a number of railroads, including the Pennsylvania. It is used solely for the convenience of the roads so connected, and the arrangement with them is for facilitating traffic over the Junction. The locomotives and crews of the other roads, when on the Junction, are subject to the orders of its Superintendent, whose control is subordinate to the general interest of facilitating traffic, for the benefit

of the other roads. For the purpose of reaching their tracks, locomotives have the right to pass on the Philadelphia and Reading Railroad, and when there the conductors are under the orders of the agent of that road. The agent says his control is for the purpose of facilitating traffic at that point, and in no other sense. The engineer, who had charge of the locotive at the time of the accident, says it was between four and five o'clock; that he always got his train there at that time; that he got his train from the Chester Valley, which came in at 4:35 o'clock; that he moved by signal from his conductor, and was going back to push some cars down that were across the Chester Valley tracks, and that he and the conductor were in the service of the Pennsylvania Railroad Company. The accident occurred on the Philadelphia and Reading. Neither the agent of that road nor the Superintendent of the Junction Road, on that day, gave any orders controlling the movements of the locomotive or its crew.

The foregoing are the facts upon which the Court was asked to take the case from the jury, and declare that those in charge of the locomotive were the servants of the Philadelphia and Reading Railroad. Yet it was their duty, from day to day, as employees of the Pennsylvania Railroad Company, to go there and get their train, and they had a right to the use of the tracks of the Reading Railroad and Junction Road for that purpose. For common interests of all parties having right to the use of the tracks, the regulation and control of movements on those tracks were under the agent of the one and Superintendent of the other. They could dismiss the hands for disobedience of orders or bad conduct. Such power was consistent with the common object, was even necessary to prevent collisions, and it by no means follows that the relations subsisting between the several railroads and their employees was severed. At the time of the accident the defendants' employees were pursuing their legitimate and accustomed duties without actual orders or interference of any agent or Superintendent of another road. It was as much in the line of their business, under the arrangement, to go there to get the train as to run it afterwards. The learned judge did right in refusing to

charge peremptorily that the defendants' responsibility for negligence ceased the moment their locomotive reached the Junction Road, to be resumed again as soon as it left with the train of cars and struck their own track. Had the agent of the Reading Railroad actually given orders which caused the accident, a question would arise which is not presented.

In view of the facts we see no error in the answers to defendants' third and fourth points. As general propositions they were affirmed, which ought to have been done without directing the attention of the jury to the evidence, with proper instructions. The learned judge would have avoided criticism by unqualifiedly affirming the third and refusing the fourth. But one appeared to grow out of the other, and both were treated together. After referring to the evidence the jury were instructed that if they found that, at the time the injury was done, the persons having charge of the engine were acting as servants and employees of the Pennsylvania Railroad Company, and the death was caused by their negligence, the company would be liable for damages. This was immediately followed with the instruction that if, on the other hand, they found that, in consequence of the arrangement, when the engine came upon that track there was an absolute surrender of all control and management of that engine to the Junction Railroad or to the Reading Railroad, whereby there was no power left in the Pennsylvania Railroad Company to determine the manner in which that engine should be run in that place, then the Pennsylvania Railroad Company would not be responsible. And then it was distinctly left to the jury to say whether or not, under all the circumstances of the case, that engine was or was not under the control of the Junction Railroad or of the Reading Railroad Company. What was said in reference to trespassing, at request of defendant's counsel, was fully corrected, and the jury told there was no evidence of trespass.

The question presented by the fifth assignment was not raised in the Court below, is not in the bill of exceptions, and cannot be considered.

After the clear exposition of the statutes by the late Chief Justice Thompson, in Penna. Railroad Co. vs. Keller, 17 P. F.

Smith, 300, nothing remains to be said on the rule relative to damages. A portion of that part of the charge contained in the fourth assignment, by itself, is objectionable, but with the context is not erroneous. However, it better have been omitted. The remark made in Railroad Co. vs. Ogier, 11 Casey, 60, is applicable here. "When the rule is accurately stated it is enough; more may not be error, but this case is a proof that it will always be claimed to be so; and this demonstrates the propriety of laying down the rule in the plainest and simplest form, consistent with a clear exposition of it."

Judgment affirmed.